**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------

RAISBEL PEÑA, on behalf of herself
and others similarly situated,

      Plaintiff,

      v.

URBAN DECAY COSMETICS, LLC and
L'OREAL USA, INC.,

      Defendants.

-------------------------------------------------------

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff, RAISBEL PEÑA (hereinafter, "Plaintiff"), on behalf of herself and others similarly

situated, by and through her undersigned attorneys, hereby files this Class Action Complaint

against Defendants, URBAN DECAY COSMETICS, LLC and L'OREAL USA, INC.,

(collectively, "Defendants") and states as follows based upon her own personal knowledge and

the investigation of her counsel:

## NATURE OF THE ACTION

1. This is a class action seeking redress for Defendants' deceptive practices in their

marketing, advertising and promotion of their Urban Decay Lush Lash System (hereinafter

"Lush Lash System" or "Product"). As alleged with specificity herein, through an extensive,

widespread, comprehensive and uniform marketing campaign, Defendants have engaged in, and continue to engage in, unconscionable business practices and deceptive acts in connection with the marketing and sale of the Product, which has injured Plaintiff and the putative class.

2.  Plaintiff brings this proposed consumer class action on behalf of herself and all other persons nationwide, who, from the applicable limitations period up to and including the present (the "Class Period"), purchased for consumption and not resale, the Product.

3.  Defendants' actions constitute violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349, as well those similar deceptive and unfair practices and/or consumer protection laws in other states.

4.  Defendants violated statutes enacted in each of the fifty states and the District of Columbia, which are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

a.  Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
b.  Alaska Unfair Trade Practices and Consumer Protection Act, Ak_ Code § 45.50.471, *et seq.;*
c.  Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
d.  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
e.  California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
f.  Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
g.  Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
h.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
i.  District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
j.  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
k.  Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
l.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
m.  Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
n.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
o.  Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
p.  Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
q.  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
r.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

s.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*

t.   Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

u.   Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*

v.   Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

w.   Michigan Consumer Protection Act, § § 445.901, *et seq.;*

x.   Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat § 325D.43, *et seq.;*

y.   Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

z.   Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

aa.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

bb.  Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

cc.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

dd.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*

ee.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*

ff.  New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq. ;*

gg.  New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq. ;*

hh.  North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

ii.  North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

jj.  Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

kk.  Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

ll.  Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

mm.     Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

nn.  Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

oo.  South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq. ;*

pp.  South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*

qq.  Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

rr.  Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act

ss.  Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

tt.  Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

uu.  Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*

vv.  Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.;*

ww. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

xx.  Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*

yy.  Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

## JURISDICTION AND VENUE

5.  This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed class consists of over 100 class members; (ii) at least some of the proposed class members have a different citizenship from Defendants; and (iii) the amount in controversy exceeds the sum of value of $5,000,000.00, excluding interest and costs.

6.  The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

7.  The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the Unites States Constitution.

8.  Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

9.  This court has personal jurisdiction over Defendants because their Product is advertised, marketed, distributed, and sold throughout New York State; Defendants engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendants are authorized to do business in New York State; and Defendants have sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants are engaged in substantial and not isolated activity within New York State.

10. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and

Defendants are subject to personal jurisdiction in this District. Plaintiff purchased Defendants' Product in New York County.

## PARTIES

11. Plaintiff is a citizen of the State of New York and resides in Bronx County. In or around 2013, Plaintiff was exposed to and saw Defendants' grow lash claims on www.urbandecay.com and by reading the Product label on the box at a Sephora cosmetics store located in Manhattan. In reliance on the grow lash claims, Plaintiff purchased the Product for personal consumption. The retail purchase price was approximately $42.00 for 1 tube of the Product. Plaintiff used the Product as directed for approximately a month and a half, but did not observe any physical growth (either lengthening or thickening) of her eyelashes. As a result, Plaintiff suffered injury in fact. Had Plaintiff known the truth about Defendants' misrepresentations and omissions, she would not have purchased the premium priced Product but would have purchased a less expensive eyelash serum.

12. Defendant URBAN DECAY COSMETICS, LLC is a limited liability company organized under the laws of the state of Delaware, with its principal place of business at 833 W. 16th Street, Newport Beach, CA 92663.

13. L'OREAL USA INC. is a domestic corporation organized under the laws of the state of Delaware, with its principal place of business located at 575 Fifth Avenue, New York, NY 10017 and an address for service of process at Corporation Service Company, 80 State Street, Albany, NY 12207.

## FACTUAL ALLEGATIONS

**Defendants**

14. Defendant L'OREAL USA, INC. ("L'OREAL") develops and manufactures cosmetic products for consumer and professional markets. It provides skincare, hair care, hair color, makeup, perfume, and fragrance products throughout the United States through a network of suppliers.

15. Defendant URBAN DECAY COSMETICS, LLC ("URBAN DECAY") develops and manufactures cosmetic products for consumer and professional markets. It provides cosmetic products throughout the United States through a network of suppliers.

16. Defendant L'OREAL USA, INC. owns and controls URBAN DECAY COSMETICS, LLC. Together, Defendants manufacture, market and sell the Urban Decay cosmetics line as part of L'OREAL's "L'Oreal Luxe" brand.

17. The Urban Decay cosmetics line is sold at department stores such as Macy's, specialty cosmetics stores such as Sephora, travel retail, boutiques and e-commerce websites such as Sephora.com, Urbandecay.com, Macys.com, Ulta.com and Amazon.com.

**The Lush Lash System**

18. Defendants manufacture, market and sell the Urban Decay Lush Lash System (the "Lush Lash System" or "Product"), an eyelash serum and mask in Urban Decay's cosmetics line. The Product retails for approximately $42.00. See the Product below:



19. Defendants have consistently conveyed the very specific message to consumers throughout the United States, including New York, that the Product, with its "accelerating serum" and "conditioning mask" will cause "25% LONGER THICKER LASHES IN TWO WEEKS" and that "the results get ridiculously more impressive, showing 40% improvement in 4 weeks, and 63% in 6 weeks."

20. Defendants' misleading marketing campaign begins with its deceptive product description, *"growth accelerating serum,"* buttressed with equally deceptive claims of the Product's (ie-miracle worker, clinical results, etc.) formula. Both imply that the Product is not just cosmetic in nature, but will actually physically grow eyelashes. Defendants' exhaustive advertising campaign builds on this deception. For example, on each and every Lush Lash

7

System package label, Defendants prominently represent that the Product is a "GROWTH ACCELERATING SERUM PLUS CONDITIONING MASK" that results in "25% LONGER THICKER LASHES IN TWO WEEKS." See Product packaging below:



21. The take representations state that while the Product will instantly condition eyelashes, consumers will also experience an additional benefit – 25% physical growth and thicker eyelashes (the "grow lash" claims). To buttress its grow lash claims, the Defendants' Urban Decay website states the following:

> *Who wouldn't want to boost their lash cache? This double-ended miracle worker holds TWO products that really perform. These are clinical results you can take to the beauty bank.*

> http://www.urbandecay.com/urban-decay/eye-makeup/lush-lash-system/281.html

22. Although Defendants represent that the Product's grow lash claims come from "clinical results", nowhere on the Product's packaging do Defendants reference the confirmatory study. Defendants also fail to make the clinical or results available to the public.

23. To illustrate the dual cosmetic and physical effects of the Product, Defendants include the image below on the Urban Decay website:



http://www.urbandecay.com/urban-decay/eye-makeup/lush-lash-system/281.html

However, no images of the model's eyelashes before the six weeks of use are provided for comparison. In short, taken in its context, Defendants' representations are deceptive in that they impart the message that eyelashes will actually grow longer and thicker as a result of continuous use of the Product.

24. The represented lash growth claims would not be interpreted by the reasonable consumer as being purely cosmetic in nature because none of the representations are preceded by language to suggest so. For example, Defendant L'OREAL's Double Extend® Lash Boosting serum, a different eyelash serum from the product line, contains language that more clearly indicates that results are purely cosmetic. For instance, Defendant L'OREAL's Double Extend® Lash Boosting

9

Serum states that the product makes lashes *"visibly fuller"* and *"appear multiplied"*. On its website for the Double Extend® Lash Boosting Serum, L'OREAL states the following:

> Pro-keratin complex.
> **Strengthens.**
> **Boosts** lash health.
>
> Double Extend® Lash Boosting Serum, for **visibly** fuller, thicker natural lashes with less lash fall-out when removing makeup. The breakthrough formula contains Centella Asiatica Extract and Arginine to **reinforce, condition, and protect each lash.** Apply daily under your mascara and at night to bare lashes to transform your natural lashes, and **see more lashes** in just 4 weeks!* *Consumers found **lashes appear multiplied** with daily application of mascara and twice daily application of serum: underneath mascara and on bare lashes overnight.

> http://www.lorealparisusa.com/en/products/makeup/eyes/mascara-primer/double-extend-lash-boosting-serum-concentrated-lash-boosting-serum.aspx

25. L'OREAL also markets another product similar to the Product, its Double Extend® Lash Boosting Mascara. Like the Product, the Double Extend® Lash Boosting Mascara is a two-part product consisting of a serum and a mascara. See the Double Extend® Lash Boosting Mascara below:



http://www.lorealparisusa.com/en/products/makeup/eyes/mascara-primer/double-extend-lash-boosting-mascara.aspx

26. On its website, L'OREAL provides the following description of the Double Extend® Lash Boosting Mascara:

Serum-infused basecoat.
Ul[t]ra-lengthening topcoat.
**Boosts** natural lashes.

Double Extend® Lash Boosting Mascara is a breakthrough 2-step mascara infused with a boosting pro-keratine complex. -Step 1: The Lash Boosting Primer is serum-infused to **boost lash condition.** It contains a pro-keratin complex that **fortifies lashes** and **maximizes their appearance.** -Step 2: The Ultra-Lengthening Mascara Topcoat coats and lengthens lashes instantly, for an up to 80% longer, clump-free fringe. For boosted results, use the mascara daily with Concentrated Lash Boosting Serum.

http://www.lorealparisusa.com/en/products/makeup/eyes/mascara-primer/double-extend-lash-boosting-mascara.aspx

27. L'OREAL makes clear that neither its Double Extend® Lash Boosting Serum nor its Double Extend® Lash Boosting Mascara can cause eyelashes to grow longer or thicker. However, as it pertains to the Product, Defendants claim that the Product actually causes eyelash growth and thickening. In describing how the Product works on the Urban Decay website, Defendants state as follows:

> *How does this stuff work? <u>The clear gel-like serum accelerates the growth of your lashes with peptides.</u> Use the tiny brush to apply it at your lash line. It penetrates at the root and stimulates keratin to lengthen, thicken and fortify your lashes. Simply brush it on each night before bed. <u>The conditioning mask applies with a wand and loads your lashes with growth peptides</u> and high potency ingredients like Panthenol and Vitamin E. Your conditioned lashes can now resist loss and breakage from being too dry and brittle. <u>All this all adds up to incredible lash magnification</u>!*

http://www.urbandecay.com/urban-decay/eye-makeup/lush-lash-system/281.html

28. To a reasonable consumer, the represented growth spike and thicker lash representations would, when taken in the context of the claims about its formula and the images on the Urban Decay website, lead the reasonable consumer to conclude that these effects have to be the result of the purported ability of the Product's "peptides" to physically cause accelerated lash growth and thickening.

11

29. In truth, the Product does not physically grow or thicken eyelashes and certainly not within the short time frames advertised by Defendants. Not even Latisse®,[1] the only prescription strength eyelash growth product approved by the U.S. Food and Drug Administration, can grow lashes in two weeks. Several well conducted scientific studies of Latisse® did not yield visible eyelash growth results for several months. *See, e.g.,* Smith, S., Eyelash Growth In Subjects Treated With Bimatoprost: A Multicenter, Randomized, Double-Masked, Vehicle-Controlled, Parallel-Group Study, 65(5) J Am Acad Dermatol. 801-6 (2012) (clinical effects of bimatoprost were seen starting at 8 weeks); Yoelin, et al., Safety, Effectiveness and Subjective Experience With Topical Bimatoprost 0.03% for Eyelash Growth (May 2010) (improvement in eyelashes seen within 3 months); Cohn, J., Enhancing the Growth of Natural Eyelashes: The Mechanism of Bimatoprost-Induced Eyelash Growth, Derm. Surgery 1361 (2010).

30. Upon information and belief, there is nothing contained in the Product that can cause eyelashes to grow 25% in two weeks, 40% in four weeks, and/or 63% in six weeks. Defendants do not provide the public with any credible or reliable clinical studies that show the Product or any of its ingredients cause eyelashes to physically grow and/or become thicker within the claimed time frames. Thus, Defendants' grow lash claims are false, misleading and reasonably likely to deceive the public.

31. Defendants' claim that its over-the-counter non-prescription grade Product physically accelerates eyelash growth and thickens eyelashes in as little as two weeks (instead of several months) is particularly attractive to Defendants' target market. Each and every consumer who purchases the Product is exposed to Defendants' deceptive grow lash claims because they appear

---

[1] The active ingredient in LATISSE® is bimatoprost. The Lush Lash System does not contain bimatoprost.

prominently, conspicuously, and almost exclusive of any other representations on the front of each box as follows:



32. The back panel of the Product expands on the grow lash claims:



**The Impact of Defendants' Deceptive Conduct**

33. Even though the Product does not cause eyelashes to physically grow or become thicker, Defendants have employed numerous methods to convey their uniform, deceptive grow lash claims to consumers, including magazines, social media websites and importantly, on the Product's packaging and labeling where it cannot be missed by consumers. Consumers pay a premium over other lash applications, which unlike the Product are not falsely advertised as growing and thickening eyelashes. Typically, non-growth mascara such as Maybelline® Define-

A-Lash® Lengthening Mascara is $6.99 per 0.22 ounce bottle. Here, based on Defendants' price of $42.00 per 0.22 ounce (0.08 oz serum and 0.14 oz conditioning mask), the premium is $35.01 per 0.22 ounce bottle.  The only reason a consumer would pay the premium price of the Product is to obtain the additional grow lash benefits, which the Product does not provide.

34. As the manufacturers, sellers and/or distributors of the Product, Defendants possess specialized knowledge regarding the content and effects of the ingredients contained in the Product on eyelash growth.

35. Defendants knew or should have known, but failed to disclose that the Product does not cause eyelashes to physically grow in length or thickness and certainly not within the time frames advertised by Defendants and they do not have competent and reliable clinical tests to support their "clinical results."

36. As a result of Defendants' deceptive grow lash claims, consumers -- including Plaintiff and members of the proposed Class -- have purchased the Product that does not perform as advertised. Moreover, they have paid a price premium for the Product over other mascara serums sold in the market that do not claim to physically grow longer or thicker eyelashes in as little as two weeks. A sample of other non-growth eyelash products are provided below:

| BRAND | QUANTITY | PRICE | SELLER |
|---|---|---|---|
| L'OREAL Double Extend® Lash Boosting Mascara | 0.33 fl oz. (0.17 oz serum, 0.16 oz mascara) | $12.99 | L'OREAL |
| L'OREAL Double Extend® Lash Boosting Serum | 0.18 fl oz. | $14.95 | L'OREAL |
| Rimmel Lash Accelerator Serum Clear | 0.37 fl oz. | $8.99 | Walgreens |

37.  L'OREAL's Double Extend Lash Boosting Mascara is only $12.99 per 0.37 ounce bottle and its Double Extend® Lash Boosting Serum is Rimmel's Lash Accelerator Serum is only $8.99.

38.  Plaintiff and members of the proposed Class have been and will continue to be deceived and/or misled by Defendants' deceptive grow lash claims. Plaintiff purchased and used the Product for more than six weeks during the Class period and in doing so, read and considered the Product label and packaging (including the representation that the Product physically causes lashes to "grow" in length and thickness in as little as two weeks) and based her decision to buy the Product and pay the price premium on those representations. Defendants' grow lash claims were a material factor in influencing Plaintiff's decision to purchase and use the Product. Plaintiff would not have purchased the premium priced Product had she known that Defendants' grow lash claims were false and misleading and that Defendants did not possess competent and reliable clinical tests to support their "clinical results." Class members similarly were deceived and as a result, Plaintiff and the Class members have been damaged in their purchases of the Product and have been deceived into purchasing a Product that they believed, based on Defendants' representations, would physically grow and thicken eyelashes within two weeks, when in fact, it does not.

39.  Based on the purported grow lash claims conveyed in their marketing and advertising campaign, Defendants are able to price the Product at a premium over other eyelash serums sold by their competitors and Defendant L'OREAL itself. For example, Defendants price the Product at $42.00, whereas Defendant L'OREAL's Double Extend Lash Boosting Serum is only $12.99 and Rimmel's Lash Accelerator Serum is only $8.99.

40. Defendants have reaped enormous profits from their false, misleading and deceptive marketing and sale of the Product.

41. Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased the Product to stop the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Product. Plaintiff alleges violations of New York's General Business Law §349, for breach of express warranty, unjust enrichment and violations of consumer protection laws in all states and the District of Columbia.

42. Through this action, Plaintiff seeks injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs and all other relief available to the Class as a result of Defendants' unlawful conduct.

## RULE 23 CLASS ALLEGATIONS

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action as a class action pursuant Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of the Product during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. Excluded from the Class are current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

44. Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

45. This action is proper for class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are thousands of Class members. Thus, the Class is so numerous that individual joinder of all Class members is impracticable.

46. Questions of law and fact arise from Defendants' conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

    a.  Whether Defendants' marketing, promotion and advertising of the Product is false, fraudulent, deceptive, unlawful or misleading;

    b.  Whether Defendants have breached warranties made to the consuming public about their Product;

    c.  Whether Defendants' marketing, promotion, advertising and sale of the Product is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to a violation of the New York General Business Law § 349 for the New York Subclass;

    d.  Whether Defendants' marketing, promotion, advertising and sale of the Product is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to consumer law violations in all other jurisdictions;

    e.  Whether Plaintiff and members of the Class sustained injuries or damages as a result of Defendants' false advertising of the Product;

f.  Whether Defendants' conduct constitutes unjust enrichment, and whether equity calls for disgorgement of unjustly obtained or retained funds, restitution to, or other remedies for the benefit of the Class;

g.  Whether Plaintiff and members of the Class are entitled to equitable relief and prospective injunctive relief enjoining Defendants from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged in this Complaint; and

h.  Whether Defendants' conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or their ratio to the actual or potential harm to the Class.

47. Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff purchased Defendants' Product during the Class Period and sustained similar injuries arising out of Defendants' conduct in violation of New York State law. Defendants' unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendants' wrongful misconduct. In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

48. Plaintiff will fairly and adequately represent and pursue the interests of the Class and has retained competent counsel experienced in prosecuting nationwide class actions. Plaintiff understands the nature of his claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the Class. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

49. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

50. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

51. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate

over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

52. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

53. Defendants' conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

### INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

54. Plaintiff realleges and incorporates herein by reference paragraphs 1 – 53  herein and further alleges as follows:

55. Plaintiff brings this claim individually and on behalf of the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL § 349").

56. NY GBL § 349 provides that deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful.

57. Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its

discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

58. The practices employed by Defendants, whereby Defendants advertised, promoted, and marketed that its Product would physically cause eye lashes to grow longer and thicker are unfair, deceptive, and misleading and are in violation of NY GBL § 349.

59. Defendants should be enjoined from marketing their Product as physically causing eyelashes to grow longer and thicker without further specification as described above pursuant to NY GBL § 349.

60. Plaintiff, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendants' conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

**COUNT II**

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

61. Plaintiff realleges and incorporates herein by reference paragraphs 1 – 60  herein and further alleges as follows:

62. Plaintiff brings this claim individually and on behalf of the other members of the Class for violations of NY GBL § 349.

63. Defendants' business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

64. The practices of Defendants described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, inter alia, one or more of the following reasons:

     a.  Defendants engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Product, which did, or tended to, mislead Plaintiff and the Class about facts that could not reasonably be known by them;

     b.  Defendants failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

     c.  Defendants caused Plaintiff and the Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

     d.  Defendants failed to reveal material facts to Plaintiff and the Class with the intent that Plaintiff and the Class members rely upon the omission;

     e.  Defendants made material representations and statements of fact to Plaintiff and the Class that resulted in Plaintiff and the Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

     f.  Defendants intended that Plaintiff and the members of the Class rely on their misrepresentations and omissions, so that Plaintiff and Class members would purchase the Product; and

     g.  Defendants knowingly and falsely represented and advertised that the Product was fit to be used for the purpose for which it was intended, to grow longer and

thicker eyelashes, when Defendants knew that the Product did not work as promised.

65. Under all of the circumstances, Defendants' conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

66. Defendants' actions impact the public interest because Plaintiff and members of the Class were injured in exactly the same way as thousands of others purchasing the Product as a result of and pursuant to Defendants' generalized course of deception.

67. By committing the acts alleged in this Complaint, Defendants have misled Plaintiff and the Class into purchasing the Product, in part or in whole, due to an erroneous belief that the Product will physically cause lashes to grow longer and thicker in as little as two weeks. This is a deceptive business practice that violates NY GBL § 349.

68. Defendants' grow lash claims misled Plaintiff, and are likely in the future to mislead reasonable consumers. Had Plaintiff and members of the Class known of the true facts about the Product's failure to work as promised, they would not have purchased the Product and/or paid substantially less for another product.

69. The foregoing deceptive acts, omissions and practices were directed at consumers.

70. The foregoing deceptive acts, omissions and practices set forth in connection with Defendants' violations of NY GBL § 349 proximately caused Plaintiff and other members of the Classes to suffer actual damages in the form of, inter alia, monies spent to purchase the Product, and are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT III

### NEGLIGENT MISREPRESENTATION
### (All States)

71. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 70 of this Complaint, as if fully set forth herein.

72. Defendants, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiff and members of the Class.

73. In making the representations of fact to Plaintiff and members of the Class described herein, Defendants have failed to fulfill their duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendants' negligence and carelessness.

74. Defendants, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendants made and intended the misrepresentations to induce the reliance of Plaintiff and members of the Class.

75. Plaintiff and members of the Class relied upon these false representations and nondisclosures by Defendants when purchasing the Product, which reliance was justified and reasonably foreseeable.

76. As a result of Defendants' wrongful conduct, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Product, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

## COUNT IV

## BREACH OF EXPRESS WARRANTIES
### (All States)

77. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 76 of this Complaint, as if fully set forth herein.

78. Defendants provided Plaintiff and other members of the Class with written express warranties, including, but not limited to, warranties that the "growth accelerating serum" in the Product has "clinical results" demonstrating that it causes "25% longer, thicker lashes in just 2 weeks! (And the results get ridiculously more impressive, showing 40% improvement in 4 weeks, and 63% in 6 weeks)" and that "[t]his double-ended miracle worker holds two products that really perform." The grow lash claims made by Defendants are an affirmation of fact that became part of the basis of the bargain and created an express warranty that the good would conform to the stated promise. Plaintiff placed importance on Defendants' grow lash claims.

79. Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a Product that grows or thickens eyelashes, let alone in two weeks as represented.

80. As a proximate result of Defendants' breach of warranties, Plaintiff and Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for products that did not conform to what Defendants promised in their promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than warranted or products that they would not have purchased and used had they known the true facts about them.

25

## COUNT V

## UNJUST ENRICHMENT
### (All States)

81. Plaintiff realleges and incorporates herein by reference paragraphs 1 – 80 of this Complaint, as if fully set forth herein.

82. Defendants received certain monies as a result of their uniform deceptive marketing of the Product that are excessive and unreasonable.

83. Plaintiff and the Class conferred a benefit on Defendants through purchasing the Product, and Defendants have knowledge of this benefit and have voluntarily accepted and retained the benefits conferred on them.

84. Defendants will be unjustly enriched if they are allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendants and for which Defendants have been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seeks judgment against Defendants, as follows:

    a.  An Order that this action be maintained as a class action and appointing Plaintiff as representative of the Class;

    b.  An Order appointing the undersigned attorney as class counsel in this action;

    c.  Restitution and disgorgement of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment, to the victims of such violations;

26

d.   All recoverable compensatory and other damages sustained by Plaintiff and the Class;

e.   Actual and/or statutory damages for injuries suffered by Plaintiff and the Class and in the maximum amount permitted by applicable law;

f.   An order (1) requiring Defendants to immediately cease its wrongful conduct as set forth in this Complaint; (2) enjoining Defendants from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (3) ordering Defendants to engage in a corrective advertising campaign; and (4) requiring Defendants to reimburse Plaintiff and all members of the Class the amounts paid for the Product;

g.   Statutory pre-judgment and post-judgment interest on any amounts;

h.   Payment of reasonable attorneys' fees and costs; and

i.   Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situates, demands a trial by jury on all questions of fact raised by the Complaint.

Dated: May 8, 2014

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

By: _____
        C.K. Lee